UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI BUTLER,

    Plaintiff,                                   Hon. Ellen S. Carmody

v.                                            Case No. 1:04-CV-539

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On November 9, 2004, the parties consented to proceed before the undersigned for all further proceedings, including an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Richard Alan Enslen referred resolution of this matter to this Court. (Dkt. #8).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

2

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 34 years of age at the time of the ALJ's decision.  (Tr. 19).  She successfully completed high school and worked previously as a cashier, daycare provider, and general laborer.  (Tr. 19, 73-79).

Plaintiff applied for benefits on December 23, 2000, alleging that she had been disabled since July 2, 1998, due to migraines, allergies, aneurysm, asthma, and memory impairments.  (Tr. 47-49, 56).  Her application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 30-46).  On October 8, 2002, Plaintiff appeared before ALJ Lawrence Blatnik, with testimony being offered by Plaintiff and vocational expert, James Engelkes.  (Tr. 347-400).  In a written decision dated March 25, 2003, the ALJ determined that Plaintiff was not disabled as defined by the Act.  (Tr. 18-26).  The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter.   (Tr. 6-9).   Plaintiff subsequently appealed the matter in this Court pursuant to 42 U.S.C. § 405(g).

Plaintiff's insured status expired on December 31, 1998.  (Tr. 19).  Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## MEDICAL HISTORY

As a teenager, Plaintiff suffered from subluxation and chondromalacia of her patellas, for which she underwent arthroscopic surgery on three occasions between 1985 and 1990. (Tr. 272-74, 276-81, 292, 296-307).

On July 1, 1998, Plaintiff reported to the emergency room complaining of worsening headaches. (Tr. 104). Plaintiff participated in an angiogram examination, the results of which revealed the presence of a "small" subarachnoid hemorrhage and an intracerebral aneurysm of the right internal carotid artery. (Tr. 105-06). The following day, Plaintiff underwent surgery, performed by Dr. Christopher Abood. (Tr. 107-09). Specifically, the doctor performed a right frontotemporal craniotomy and a microscopic clipping of the right carotid aneurysm. *Id.*

On July 3, 1998, Plaintiff participated in a CT scan of her brain, the results of which revealed "satisfactory postoperative appearance without significant mass effect or hemorrhage." (Tr. 176). The results of another CT scan of Plaintiff's brain, conducted on July 15, 1998, were "stable" with "no evidence for an intracranial hemorrhage." (Tr. 175).

On August 4, 1998, Plaintiff was examined by Dr. Abood. (Tr. 168). Plaintiff reported that she was "doing well" with "no real complaints." *Id.* Two days later, Plaintiff participated in a left vertebral arteriogram and right internal carotid arteriogram, the results of which revealed "no evidence of aneurysm." (Tr. 171-72). An August 17, 1998 examination revealed that Plaintiff was "doing well" with "no complaints." (Tr. 167).

On February 23, 1999, Plaintiff was examined by Dr. Abood. (Tr. 166). Plaintiff reported that she had experienced only two migraine headaches since undergoing surgery. She reported that she was not presently experiencing any difficulties. *Id.*

4

On August 21, 1999, Plaintiff reported to the emergency room complaining of a headache. (Tr. 178-79). She reported that while her medication generally controlled her headaches, this headache had not responded to medication and was getting progressively worse. (Tr. 178). She reported that she was experiencing neck pain, stiffness, nausea, chills, photophobia, blurred vision, heaviness and weakness in her upper extremities, and disrupted balance. *Id.* The results of an examination (including a CT scan of Plaintiff's brain) were unremarkable. (Tr. 178-79). Plaintiff responded favorably to pain medication and was discharged home in "good condition." (Tr. 179).

On January 31, 2001, Plaintiff's husband completed a questionnaire regarding Plaintiff's activities. (Tr. 87-92). Plaintiff's husband reported that on a typical day, Plaintiff cooks, washes dishes, vacuums, reads, talks on the telephone, performs volunteer activities, watches television, "works" her dogs, and cares for her personal needs. (Tr. 87-90). He reported that Plaintiff also drives, shops, visits relatives, plays bingo, rides horses, performs puzzles, attends club meetings, and dines out. *Id.*

On January 21, 2002, Plaintiff was examined by Dr. Edmund Messina. (Tr. 317-22). Plaintiff reported that she was experiencing headaches which were worsened by head movement, bending, stooping, straining, light, noise, and "any" movement. (Tr. 317). She reported that her headaches were accompanied by nausea, vomiting, diarrhea, constipation, ringing ears, dizziness, stuffy nose, droopy eyelid, tender and burning scalp, cervical pain, light sensitivity, blurred vision, restlessness, depression, paleness, excessive fatigue, double vision, slurred speech, weakness in her extremities, clumsiness, and difficulties balancing and walking. (Tr. 317, 320). Plaintiff reported that her pain was relieved by medication, dark rooms, sleep, ice pack, and resting quietly. (Tr. 317).

5

An examination of Plaintiff's cervical spine was unremarkable. (Tr. 320). The results of a cranial nerve examination were unremarkable. *Id.* Motor, sensory, and coordination testing revealed no evidence of abnormality. (Tr. 320-21). Plaintiff exhibited "normal" station and gait. (Tr. 321). Dr. Messina concluded that Plaintiff was suffering from "common" migraine headaches which had "evolved to transformed migraine with elements of rebound." *Id.* Plaintiff was prescribed Topamax. (Tr. 321-22).

When examined by Dr. Messina on February 4, 2002, Plaintiff reported that she was experiencing "mild" headaches daily and "severe" headaches 2-3 times weekly. (Tr. 324). She reported that her prescription medication was "ineffective." *Id.*

On July 15, 2002, Dr. Laurain completed a questionnaire regarding Plaintiff's impairments. (Tr. 311-16). The doctor reported that Plaintiff has suffered from "global" headaches since undergoing surgery in July 1998. (Tr. 311). According to the doctor, Plaintiff's headaches "vary in intensity" and "often" cause Plaintiff to experience nausea and vomiting, blurred vision, and difficulty performing the activities of daily living. *Id.* Dr. Laurain also reported that Plaintiff began to recently experience "episodes of blank stare w[ith] confusion." (Tr. 312). The doctor noted, however, that the results of an EEG examination were negative. *Id.* The doctor reported that Plaintiff's headaches would prevent her from performing "even basic work activities." (Tr. 314). Dr. Laurain concluded that Plaintiff's headaches would cause her to be absent from work "at least" four times monthly. (Tr. 315).

At the administrative hearing, Plaintiff testified that she experiences "a headache constantly everyday." (Tr. 367). She further testified that "the week before, the week of, and the week after my period, I have migraines continuously. And then I have that one, what I call my free

6

week, that I do have a headache but it's tolerable." *Id.* Plaintiff reported that when she experiences these headaches, she suffers vomiting, concentration difficulties, light sensitivity, and dizziness. (Tr. 368). She testified that she also experiences short term memory difficulties. *Id.*

Plaintiff reported that her migraine problems had "gotten worse" over the past 2-3 years. (Tr. 378). In this respect, Plaintiff reported that she had recently begun to experience "quite a few blackouts." For example, Plaintiff reported that during a recent vacation trip she suffered "22 blackouts" in a three hour period. *Id.*

## ANALYSIS OF THE ALJ'S DECISION

### A.  Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional

---

[1]1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

impairment as well as an exertional impairment, both are considered in determining her residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

**B.  The ALJ's Decision**

The ALJ determined that Plaintiff suffers from the following severe impairments: migraine headaches, a history of aneurysm, and asthma.  (Tr. 22).  The ALJ further determined that these impairments, whether considered alone or in combination, fail to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  *Id.*  The ALJ determined that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 23-25).  Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1.  The ALJ Failed to Properly Evaluate the Opinion
of Plaintiff's Treating Physician**

Plaintiff began treating with Dr. John Laurain in August 1998, shortly after undergoing brain surgery.  (Tr. 203).  Plaintiff treated with Dr. Laurain through at least January 2001. (Tr. 195-239, 241-43).  As noted above, Dr. Laurain reported that Plaintiff has suffered from "global" headaches since undergoing surgery in July 1998.  (Tr. 311).  According to the doctor, Plaintiff's headaches "vary in intensity" and "often" cause her to experience nausea and vomiting, blurred vision, and difficulty performing the activities of daily living.  *Id.*  Dr. Laurain reported that

8

Plaintiff's headaches would cause her to be absent from work "at least" four times monthly and would further prevent her from performing "even basic work activities." (Tr. 314).

While Dr. Laurain completed this report in July 2002, well after the expiration of Plaintiff's insured status, the doctor expressed the opinion therein that the various limitations from which Plaintiff suffered manifested themselves well *before* the expiration of her insured status. The opinions expressed by Dr. Laurain conflict with the ALJ's residual functional capacity (RFC) assessment. (Tr. 23). As the vocational expert testified, an individual limited to the extent identified by Dr. Laurain would be unable to perform any work. (Tr. 397-98). Thus, the opinions expressed by Dr. Laurain, one of Plaintiff's treating physicians, if accorded controlling weight by the ALJ would have resulted in a finding that Plaintiff was disabled. While the ALJ rejected Dr. Laurain's opinion, he failed to articulate *any* rationale for doing so.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Nonetheless, the ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*,

9

839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

As the Sixth Circuit recently made clear, however, when an ALJ chooses to accord less than controlling weight to the opinion of a treating physician, he must adequately articulate his rationale for doing so. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-47 (6th Cir. 2004). As the *Wilson* court held:

> If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors - namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion.
>
> Importantly for this case, the regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Id.* at 544 (internal citations omitted).

As the *Wilson* court further held, failure to comply with this requirement is not subject to harmless error analysis. *Id.* at 546-47. As the court expressly stated:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. . .To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the

Commissioner the ability [to] violate the regulation with impunity
and render the protections promised therein illusory.

*Id.* at 546 (internal citations omitted).

As previously noted, the ALJ failed to articulate any rationale for his decision to accord less than controlling weight to Dr. Laurain's opinion. Given the testimony of the vocational expert that the limitations expressed by Dr. Laurain precluded the performance of all work, the significance of the ALJ's error is clear. The ALJ's failure clearly violates the principle articulated in *Wilson*.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and immediately award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, neither is the evidence of Plaintiff's disability compelling. The Commissioner's decision must, thereefore, be reversed and this matter remanded for further factual findings, including but not necessarily limited to, the proper consideration of the opinions expressed by Dr. Laurain.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision does not comply with the relevant legal standards and must, therefore, be reversed. The Court further concludes, however, that there does not exist compelling evidence that Plaintiff is disabled.

11

Accordingly, the Commissioner's decision is **reversed** and this matter be **remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.  A judgment consistent with this opinion will enter.


Date:  August 31, 2005                                  /s/ Ellen S. Carmody                    
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge

12